```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MONTANA
                    MISSOULA DIVISION
   _____
```

UNITED STATES OF AMERICA,
                                    CAUSE NO. CR 06-2-M-DWM
            Plaintiff,

       vs.
                                    FINDINGS AND RECOMMENDATION
                                    OF UNITED STATES
                                    MAGISTRATE JUDGE
SHAUN MICHAEL MERCER,

            Defendant.
   _____

The Government has charged Defendant by indictment with one count of using a fraudulent social security number, in violation of 42 U.S.C. § 408(a)(7)(B). On April 13, 2007, Defendant moved to suppress statements he made to law officers at the time of his arrest on an unrelated charge, as well all tangible evidence obtained as a result of his statements.

Chief Judge Donald W. Molloy has referred the motion to suppress to the undersigned for initial determination. Pursuant to this referral, the undersigned held a suppression hearing on April 26, 2007. Based on the evidence and testimony presented at the suppression hearing,

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (dkt

ORDER/ PAGE 1

#19) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel on or before May 2, 2007, at 12:00 noon.[1]

DONE and DATED this 30th day of April, 2007.

                                 /s/ Jeremiah C. Lynch
                                 Jeremiah C. Lynch
                                 United States Magistrate Judge

### Discussion

**I.   Factual Background**

The Court makes the following factual findings based on the evidence and testimony presented at the suppression hearing. On December 4, 2004, law enforcement officers of the Bonner's Ferry, Idaho Police Department received information that an individual matching the description of a felony warrant suspect by the name of Shaun Michael Mercer was at the Kootenai River Inn Casino in Bonner's Ferry. The warrant information alerted the officers that Defendant might be armed and dangerous, and included

---

[1] *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full ten day period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

Mercer's photograph.[2]

Bonner's Ferry Police Officer Martin Ryan responded to the call, and was met at the casino by a back-up officer from the Bonner County Sheriff's Office. As he was speaking to one of the casino's security guards, Officer Ryan observed a man matching Defendant's physical description leave a room in the back of the casino. As Defendant exited the room and saw Officer Ryan, who was armed and in uniform, he turned abruptly and began walking down a back hallway. Officer Ryan called out to Defendant, addressing him as "Mercer."[3] Defendant looked back briefly in response, before continuing down the hall and into the casino restroom.

Officer Ryan immediately followed Defendant into the restroom, along with the back-up officer who positioned himself just inside the door to the restroom.[4] Officer Ryan explained that he was seeking an individual by the name of Shaun Mercer who was wanted on an arrest warrant, and requested identification.[5]

---

[2] The police department had previously circulated a copy of the photograph to the security personnel at the Kootenai River Casino.

[3] Defendant testified that he did not understand Officer Ryan, who was either yelling or mumbling. Defendant's testimony in this regard was not credible.

[5] Defendant testified that Officer Ryan never explained why he was being questioned. Again, the Court finds Defendant's testimony less than credible.

ORDER/ PAGE 3

Defendant produced a Montana driver's license bearing the name Thomas Dean Ward.  Officer Ryan ran a computer check on the Montana driver's license, which came back valid.  Officer Ryan was confused by the results of the computer check in light of the striking resemblance between Defendant and the photograph of Shaun Mercer.  Officer Ryan asked Defendant to provide additional identification in an attempt to clear up his confusion and to rule out the possibility that the wrong individual was being sought on the warrant.  In response, Defendant produced a debit card, vehicle insurance card, and a purported Colorado "Registered Body Guard" identification card, all in the name of Thomas Dean Ward.

Upon closer inspection, Officer Ryan observed that all of Defendant's identification cards had been acquired just a few months earlier.  Officer Ryan found it suspicious that Defendant could not produce any form of identification bearing an earlier date.  Based on that suspicion, and in light of Defendant's striking resemblance to Mercer's photograph, Officer Ryan continued to question him as to his true identity.  By this time visibly nervous, Defendant admitted in response to Officer Ryan's questions that he was indeed Shaun Michael Mercer, and not Thomas Dean Ward.  Defendant explained that he had created a false birth certificate which he then presented to the Department of Motor Vehicles to get a driver's license under the false name of Thomas Dean Ward.

Officer Ryan arrested Defendant on the warrant and subsequently advised the Montana Division of Motor Vehicles that Defendant's false driver's license would have to be cancelled. In January 2006 the United States of America charged Defendant with using a fraudulent social security number.

## II.  Analysis

Defendant originally moved to suppress all "statements made at the time of his arrest at the Idaho casino" and "all tangible evidence of social security number fraud obtained as a result of [D]efendant's illegal detention and confession at the Idaho casino."  Def's. Mot. to Suppress, 3 (Apr. 13, 2007).  Defendant clarified at the hearing, however, that he only seeks to suppress the explanation he provided to Officer Ryan as to how he acquired the false driver's license.  He claims Officer Ryan exceeded the scope of what began as a legitimate *Terry* stop questioning him after ascertaining his true identity.  Defendant maintains it was only in response to that improper questioning that he provided incriminating information regarding his improper use of a social security number to obtain a Montana driver's license.  According to Defendant, what began as a *Terry* stop escalated into a full-fledge custodial interrogation, and Officer Ryan therefore violated his Fifth Amendment rights by continuing to question him without first administering *Miranda* warnings.

ORDER/ PAGE 5

1.  **Reasonable suspicion to effectuate *Terry* stop**

It is well-established that law enforcement officers may conduct an investigatory stop if they have a reasonable suspicion that an individual is involved in criminal activity. *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002). Reasonable suspicion exists if there are "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Colin*, 314 F.3d at 442 (*quoting United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000)). Officers initiating such a stop may ask the individual "a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Detention pursuant to a *Terry* stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." *United States v. Brigham,* 382 F.3d 500, 507 (5th Cir. 2004) *(citing United States v. Dortch*, 199 F.3d 193, 200 (5th Cir. 1999).

Defendant does not dispute that Officer Ryan had reasonable suspicion to initiate the *Terry* stop and inquire into his identity. Nor does he dispute that Officer Ryan had reasonable suspicion to keep asking questions as to his true identity even

after the computer check indicated his license was valid.  It must be remembered that it was the Defendant who affirmatively produced the Montana driver's license in an attempt to deceive the officer.  Consequently, it was reasonable for Officer Ryan to suspect Defendant was not who he claimed to be based on the fact that he resembled the photograph of the suspect sought on the warrant and in light of the fact that all of his identification cards were just three months old.  Because Officer Ryan had not yet satisfied the purpose of the stop, which was to ascertain Defendant's identity, he had reasonable suspicion to prolong the *Terry* stop to achieve that objective.

   While Defendant does not dispute that Officer Ryan had a reasonable suspicion to effectuate the *Terry* stop for purposes of ascertaining his identity, he claims the purpose of the stop was satisfied as soon as he admitted to his true identity.  When Defendant conceded his name was in fact Shaun Michael Mercer, Officer Ryan testified that he was surprised to see an individual with so many false forms of identification and responded by saying, "Wow, how did you do that?" or words to that effect.  It was in response to that inquiry that Defendant explained he had acquired a false birth certificate and social security number which he in turn used to procure the false driver's license.

   Defendant moves to suppress his response to that single inquiry on the basis that it exceeded the scope of the investigatory stop.  He claims Officer Ryan violated his Fifth

ORDER/ PAGE 7

Amendment rights by asking that question without first administering *Miranda* warnings.  Accordingly, the sole issue before the Court on the pending motion is whether that question constituted a custodial interrogation for purposes of *Miranda*.

### 2.  **Custodial Interrogation for purposes of *Miranda***

For *Miranda* to apply, a suspect must be in custody and subject to interrogation.  *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).  Defendant maintains he was in custody when Officer Ryan asked that final question, and contends the question constituted an interrogation because it was "reasonably likely to elicit an incriminating response."  *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1982).  The Government, in contrast, argues that no *Miranda* warnings were required because the entire encounter constituted a lawful *Terry* stop and Officer Ryan's single question did not constitute a custodial interrogation.  The Government is correct.

#### A.  Custody

To determine whether a person is "in custody" for purposes of *Miranda*, "a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.'" *Stansbury* v. *California*, 511 U.S. 318, 322 (1994) (citation omitted).  The court must thus "determine, based on the

ORDER/ PAGE 8

totality of the circumstances, whether 'a reasonable person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave.'" *United States v. Beraun-Panez*, 812 F.2d 578, 580, modified by 830 F.2d 127 (9th Cir. 1987). The Ninth Circuit looks to the following factors to determine whether an individual is in custody for purposes of *Miranda*: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (citation omitted).

With regard to the first factor, Officer Ryan attempted to initiate contact with the Defendant by calling his name. When that was unsuccessful, Officer Ryan simply followed Defendant into the restroom to question him as to his identity. Because Officer Ryan followed the Defendant rather than summoning him with a command or show of force, the first factor weighs against a finding of custody.

Under the second factor, this Court is to evaluate the extent to which Officer Ryan confronted Defendant with evidence of his guilt. As the entire purpose of the encounter was to investigate Defendant's identity, Officer Ryan did not confront the Defendant with any evidence of his guilt relating to either

the state offense upon which the arrest warrant was based or, obviously, the offense charged in this case.  The second factor thus weighs against a finding of custody as well.

The third factor requires the Court to consider the physical surroundings of the questioning.  The encounter in this case occurred in the relative isolation of a public restroom with two officers present.  Both the Defendant and Officer Ryan testified that the encounter was non-confrontational, or "relaxed."  Even assuming, without deciding, that this were to weigh in favor of finding Defendant was in custody, the two final factors mitigate against a such a finding.  The entire encounter lasted no more than a maximum of ten to fifteen minutes, including that portion of the encounter which Defendant does not dispute constituted a legitimate *Terry* stop.  The alleged interrogation itself during which Defendant claims he was in custody lasted only as long as it would have taken for Officer Ryan to ask a single question and Defendant to respond.  *See United States v. Bautista*, 684 F.2d 1286, 1291 (9th Cir. 1982) (concluding duration of *Terry* stop was not excessive where "follow-up questions were made necessary by defendants' unconvincing and suspicious answers to the initial, routine questions"); *United States v. Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974) (concluding investigative stop lasting more than one hour was proper where the scope of questioning did not go beyond the justification for the stop and the officers were

ORDER/ PAGE 10

attempting to verify the suspects' implausible and evasive answers).

Finally, the degree of pressure applied to detain Defendant was minimal. Officer Ryan did not apply any physical pressure whatsoever or otherwise restrain Defendant. *See Bautista*, 684 F.2d at 1289 (noting that "[a] brief but complete restriction of liberty, if not excessive under the circumstances, is permissible during a *Terry* stop and does not necessarily convert the stop into an arrest"); *United States v. Galindo-Gallegos*, 244 F.3d 728, 735 (9th Cir. 2001) (concurring opinion) (noting that physical detention or restraint does not necessarily "convert[] an investigatory stop into a custodial interrogation"). Any psychological pressure was minimal, as Officer Ryan did not conduct himself in a confrontational manner. Even Defendant described Officer Ryan's demeanor during what appears to have been a conversational encounter as "real relaxed."

For all of the above reasons, the Court finds that Defendant's freedom of action during the stop was not "curtailed to a 'degree associated with formal arrest,'" thereby requiring *Miranda* warnings. *Berkemer*, 468 U.S. at 440 (*quoting California v. Beheler*, 463 U.S. 1121, 1125 (1983)). Even if the contrary were true, and Defendant was found to have been in custody, no *Miranda* warnings were necessary because Officer Ryan did not subject him to an interrogation.

**B. Interrogation**

"Not every question asked in a custodial setting constitutes 'interrogation.'" *United States v. Chen*, 439 F.3d 1037, 1040 (9th Cir. 2006). To determine whether questioning constitutes an interrogation, courts must determine whether "under all the circumstances involved in a given case, the questions are 'reasonably likely to elicit an incriminating response from the suspect.'" *Chen*, 439 F.3d at 1040 (*quoting United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1982)). In addition, "'[i]nterrogation," as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

Applying these standards, the single question at issue here does not constitute an interrogation. After several minutes of questioning an evasive and uncooperative suspect, Officer Ryan asked in what he credibly characterized as a passing comment on Defendant's multiple forms of identification, "Wow, how did you do that?" That single question did not "reflect a measure of compulsion above and beyond that inherent in custody itself," as required by the United States Supreme Court. *Innis*, 446 U.S. at 300.

Finally, while not dispositive, Officer Ryan's subjective intent is one factor for the Court to consider in determining

ORDER/ PAGE 12

whether an interrogation occurred.  *United States v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994).  Officer Ryan credibly testified that he posed the question as a passing comment on Defendant's multiple forms of identification, and not as an attempt to interrogate Defendant on any question beyond that of his identity.

Primarily because the single question posed by Officer Ryan did not reflect any "measure of compulsion above and beyond that inherent in custody itself," and also because Officer Ryan did not intend to interrogate or further question Defendant in any way, this Court concludes Defendant was not subjected to an interrogation.  In short, the Court does not find that Officer Ryan should have known his spontaneous question was reasonably likely to elicit an incriminating response.

For all of the above reasons, the Court concludes that Defendant was not subjected to a custodial interrogation and no *Miranda* warnings were required.[6]  Defendant's motion to suppress should therefore be denied.

---

[6] Having so concluded, this Court need not address the Government's argument that the motion to suppress should be denied based on the inevitable discovery doctrine.  Even if the Court were inclined to address the argument, it could not effectively do so because the Government admittedly failed to present any evidence, testimony, or argument relating to the inevitable discovery doctrine at the suppression hearing.

ORDER/ PAGE 13